### MEHRLE v. AMERICAN BRIDGE CO. OF NEW YORK.

(Supreme Court, Appellate Term. March 16, 1909.)

1. CONTRACTS (§ 300*)—MOVEMENT OF FURNITURE—DELAYS—LIABILITY.

Where it was contemplated, under a contract to move office furniture from one building to another, that the contractor would have the use of the elevator service in the building from which the furniture was to be moved, she was not bound to pay for such service, and a delay caused by a dispute as to who should pay the elevator operators for their overtime service cannot be attributed to her.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 300.*]

2. WORK AND LABOR (§ 14*)—QUANTUM MERUIT—RIGHT TO RECOVER THEREON.

Under a contract to move furniture and safes, the owner could not rescind as to the furniture after part of the work had been done, under a claim of a breach by the contractor, and allow performance as to the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

safes, so as to defeat the contractor's right to recover on a quantum meruit.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 31; Dec. Dig. § 14.*]

Giegerich, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by Julia Mehrle against the American Bridge Company of New York. From a judgment for plaintiff, and from an order refusing to vacate the judgment, defendant appeals. Affirmed.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and SEABURY, JJ.

Stetson, Jennings & Russell (Raynol C. Bolling, of counsel), for appellant.

James E. Duross, for respondent.

SEABURY, J. In this action the plaintiff seeks to recover $500, alleged to be the reasonable value of services performed by the plaintiff on behalf of the defendant in moving furniture and office equipment from the defendant's place of business. These services were performed under a contract which is expressed in five letters exchanged between the parties. Under this contract the plaintiff agreed to perform the work "any time, day or night, at your [defendant's] convenience during the month of April," 1908. The defendant contends that it subsequently designated April 15th as the date upon which the moving should be completed. It was the contention of the plaintiff, however, that the defendant fixed April 16th as the time within which the plaintiff was required to complete the work. The judgment of the court below in favor of the plaintiff has resolved this question of fact in favor of the plaintiff.

The evidence shows that the plaintiff moved 95 van loads of furniture and nine safes and two machines, and that all of this work was done by April 15th. The plaintiff, on April 15th, was engaged in the work from 9 o'clock in the morning until 12 o'clock that night. On the evening of April 15th the plaintiff was seriously embarrassed in the performance of this work by reason of the fact that the men who had been operating the elevators in the building in which the furniture was located ceased their work for over 1 hour and 30 minutes. This cessation of work was caused by a dispute as to who should pay the men operating the elevators for overtime. The plaintiff was not required to assume this obligation, and it is clear that, when the contract was made, it was contemplated by the parties that the plaintiff should have the use of the elevator service while engaged in removing the furniture from the building. This delay, which materially affected the plaintiff in the performance of the work, cannot be attributed to the plaintiff. On the morning of April 16th the plaintiff reported at the building and was ready to proceed with the work. The defendant refused to permit the plaintiff to perform, and gave the contract to remove the balance of the furniture to a third party. At this time all of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the furniture had been removed except 15 van loads, and the evidence shows that the work could have been completed on April 16th if the defendant had permitted the plaintiff to complete the contract.

It is significant that, although the defendant refused to allow the plaintiff to remove the balance of the furniture on April 16th, yet it did allow a subcontractor of the plaintiff to remove two safes on the afternoon of that day. In other words, the defendant, claiming that the plaintiff had been guilty of a breach of the contract, elected to rescind it as to the furniture and to allow performance as to the removal of the safes. This position is inconsistent and untenable. The defendant could not rescind the contract, and accept the benefits which accrued from work subsequently performed under it, and then defeat the plaintiff's right to recover upon a quantum meruit. The evidence abundantly establishes that the work performed by the plaintiff was fairly and reasonably worth the sum for which the court below gave judgment for the plaintiff.

The judgment is affirmed, with costs.

GILDERSLEEVE, P. J., concurs.

GIEGERICH, J. (dissenting). The action is upon a contract for the removal of office furniture and effects of the defendant from the building known as No. 42 Broadway to the Hudson Terminal Building, No. 30 Church street, in the borough of Manhattan, New York City. The contract covering the work consists of five letters exchanged between the plaintiff, who does business under the name of "Downing's Storage Warehouse Company," and the defendant, copies of which are annexed to the defendant's answer. In the letter of the plaintiff to the defendant, dated January 22, 1908, there is a proposal to "do the job complete, safes included, for the sum of $500, and guarantee satisfaction." The defendant's sales agent, one Louis E. Vielhaber, replying to said letter, in his letter of February 19th accepted the proposal upon the terms therein specified, among which is one that the plaintiff is "to furnish a force of trained men to fulfill this agreement." The plaintiff's manager, one John J. Downing, by letter dated the following day agrees to do the work upon the terms specified in the defendant's letter of the previous day. On February 21st the defendant's sales agent wrote:

"In our communication of February 19th we neglected to state this removal was to be done day or night, at our convenience, during the month of April."

And the plaintiff's manager, by letter of February 24th, wrote in reply as follows:

"Referring to your communication of February 21st regarding the removal of office furniture, etc., for the American Bridge Company of New York, 42 Broadway, hereby agree to do same any time day or night, at your convenience, during the month of April, as per your proposal."

The answer, after admitting the incorporation of the defendant and the nonpayment of the sum sought to be recovered, denies the remaining allegations of the complaint. The defendant also pleaded a breach

of the contract and set up a counterclaim for additional expenses incurred by reason of plaintiff's alleged default.

It appears from the evidence that the plaintiff removed from No. 42 Broadway the following numbers of loads of furniture on the dates specified, viz.: March 15th, one load; March 25th, two loads, and on April 11th, nine loads. The plaintiff's said manager testified that prior to the removal of the nine loads, and about April 5th, he had a conversation with the defendant's sales agent, in the course of which the latter told him to "move us by the 15th or 16th," and that he replied, "All right, we could do it on the 15th or 16th." The defendant's sales agent testified that a few days prior to April 15th he told the plaintiff's manager that he wanted the engineering department positively moved on the 15th of April, and he further testified on cross-examination as follows:

"Q. Yes; and the 16th? A. No; the 15th. There was no 16th to it. Q. Well, the rest of the things you wanted moved on the 16th? A. Oh! no; not the rest of the things. The point there was the engineering department particularly, because we had laid this department off for a whole day—very expensive men."

It further appears from the evidence that such engineering department was the largest of the defendant's departments, employing nearly 100 engineers, draftsmen, and others. The defendant's sales agent further gave testimony to the effect that the plaintiff's manager told him that he would positively remove the engineering department on April 15th, and that "on that basis we [the defendant] closed down that department." This testimony was not denied by the plaintiff's manager.

The main part of the moving began on April 14th—a day ahead of time, according to the plaintiff's manager's testimony. On the day last mentioned the plaintiff's men worked from about 9 o'clock in the morning until about 1 o'clock of the following morning, the 15th. The plaintiff's men worked at 42 Broadway on said April 15th, but the hour at which they quit is in dispute. According to the testimony given for the defendant, they left about half past 9 o'clock in the evening; but, on the other hand, there was evidence adduced for the plaintiff that they did not leave until midnight. It is undisputed, however, that the plaintiff refused to keep a force of men at work throughout the night. The plaintiff's manager on cross-examination testified:

"Q. Now, will you tell us just why you stopped work on the night of the 15th of April? A. Well, we worked from 9 o'clock in the morning until 12 o'clock at night. You didn't want us to work all day and all night, did you? We worked the night previous—all day until 1 or 2 o'clock in the morning, on the 14th. Q. You realize that the contract calls for work day or night, at the convenience of the American Bridge Company of New York? Do you realize that? A. During the month of April. Q. Day or night during the month of April? A. Yes, sir. Q. This was the morning of April 14th and 15th? A. The contracts were in the month of April. Q. And you were to do the work day and night, at the convenience of the American Bridge Company?

"The Court: The contract speaks for itself.

"Witness: Day and night—that is right; but we can't work continuous, ʼll day and all night. * * * Q. You just stopped that night; just an

ordinary stop. It was too late to go on? A. No, we stayed working up to 12 o'clock. Q. Then you stopped? A. Certainly; we had to go home."

Mr. Anthony J. Henrich, Jr., the secretary to the defendant's sales agent, testified that on the night of April 15th he was informed that the plaintiff's men had quit work by the direction of Mr. Downing, the plaintiff's manager, and that he thereupon went in search of him and found him in the Church Street building about 20 minutes before 10 o'clock, and asked:

"What was the reason for stopping? He says, 'I and Mr. Vielhaber were playing him for a sucker.' So I said, 'Then you don't want to go on?' He said, 'No.' So I said, 'Don't bother coming in the morning, if you refuse to continue to-night.' He said, 'All right,' and started swearing at me."

The witness gave further testimony to the effect that he then went to East Orange and got Mr. Vielhaber out of bed, and that upon his return, at about a quarter to 12 o'clock, he did not find any of plaintiff's men at either 42 Broadway or 30 Church street. There was evidence adduced on the part of the defendant that on the night in question one of the plaintiff's movers was somewhat under the influence of liquor, that other workmen were sitting around and had to be urged to do any work, and that as a result of their inactivity furniture was not moved as expeditiously as it should have been, and that complaint of the manner in which the work was carried on was made to the plaintiff's representatives, but Mr. Downing denied that any such complaint was ever made to him.

Testimony was also given to the effect that when the plaintiff quit work on April 15th only a portion of the furniture was moved, and that none of the plaintiff's men reappeared until the following day, April 16th. There is a conflict of testimony as to the hour at which they reappeared and what took place when they did. The plaintiff's witness testified that some of them came back at about half past 9 o'clock in the forenoon, and were told that their services were no longer required. The defendant's witnesses, on the other hand, swore that plaintiff's movers did not put in an appearance until about 2 or half past 2 o'clock in the afternoon, and that they were told by Mr. Vielhaber that the defendant's entire engineering force was crippled, owing to the refusal to proceed with the work the night before, and that he had to give the contract to some reliable concern. Mr. Vielhaber also testified that he "tried to get Mr. Downing on the phone, and chased him all over, and couldn't get him," and that finally he was compelled to get the moving completed by another mover, and that at half past 6 o'clock of the morning of the 16th of April he entered into an arrangement therefor.

The trial justice gave judgment for the plaintiff, and the defendant has appealed to this court. Such ruling is evidently based upon the theory that the plaintiff was not required to work continuously upon the job by day and night; in other words, that if the plaintiff moved furniture during the day he could not be called upon to do night work, or vice versa. This, however, is not the true interpretation of the contract, which did not call for the service of any particular individual, but only required the plaintiff to furnish enough trained men to fulfill

the agreement. The plaintiff's manager testified that he hired 15 extra men for the job, and it is apparent from a reading of the record that he could have obtained more, if needed, to finish it on April 15th as he agreed to do. It was possible for the plaintiff to have obtained two shifts of men, by which method the defendant's counsel claims work is done constantly in the city of New York, and the plaintiff should have resorted to such means, if necessary to the performance of her contract.

As already shown, it was highly important to the defendant that the engineering department should be moved upon April 15th, as the plaintiff agreed to do, in order that only one day might be lost by the large number of men who were kept idle at the defendant's expense during the moving of that department. That such removal could have been made within the stipulated time by the use of two shifts of men clearly appears from the record; and it was plaintiff's duty to perform within such stipulated time, especially as she had knowledge of the extraordinary situation which required the removal of the engineering department on the specified day.

The plaintiff's manager, while not denying that he agreed to move such department on the 15th, nevertheless claims that he was told by the defendant's sales agent that the whole of the work must be done on the 15th and 16th of April. But according to his own showing the conversation in which such instruction was given took place on April 5th, while it appears from the uncontradicted testimony of the defendant's sales agent that the instruction to move the engineering department on April 15th was given a few days prior to the date last mentioned. As already shown, the removal was to be done at the defendant's convenience, and hence the last instructions should have guided the plaintiff. But, apart from all this, it is apparent that the plaintiff's manager must be mistaken in his testimony that the defendant's sales agent told him he must finish all the work on the 15th and 16th of April, since it appears from other parts of his testimony that the latter told him that "he would like to have the president's office moved on the 17th."

The plaintiff also contends that she was prevented from moving all the furniture from the engineering department on April 15th by reason of a controversy as to who should pay for the elevator service at 42 Broadway. Her manager testified that he refused to pay for the same, and that because of such refusal "he was tied up for an hour and a half"; but Mr. Frank C. Manley, a civil engineer employed in the defendant's engineering department, testified that he personally guaranteed to give extra pay and supper money to two of the elevator men, and that the operation of two elevators was thereupon resumed at half past 7 o'clock on the evening of April 15th, and that they continued to give service without further interruption until the plaintiff finally quit work at about half past 9 o'clock. There were thus at the plaintiff's disposal two elevators on the night in question, and if credence be given to the testimony of the plaintiff's witness they used them until about midnight. Since the elevators were so at the disposal of the plaintiff, there was nothing, so far as the record discloses,

to prevent her, after such alleged delay, from moving the balance of the furniture from the Broadway building to the new quarters in Church street on the day specified.

By the terms of the contract the plaintiff was required to move said engineering department on such date, and she should have done so, even if she had to hire extra men and to use her workmen in two shifts. The plaintiff ought to have known, from her experience as a furniture mover, that she would require a large force of men, divided in so-called shifts of men, day and night, in order to completely move the department referred to in one day. She knew perfectly well that among "moving people" the job was considered a "big one," and her failure to fully perform her contract should not be excused simply because she undertook it for a low figure. The plaintiff, through her manager, knew perfectly well what was required of her when she made the contract in suit, and, as above seen, her manager was told by the defendant's representatives, when he refused to continue at work on the night of April 15th, that "he need not bother about coming back." As he persisted in leaving, notwithstanding the protests of the defendant's representatives, the plaintiff must abide by the consequences of his breach.

I therefore conclude that there was a material breach of the contract, which, as seen, was an entire one, and that the plaintiff was not entitled to recover, as she did, upon a quantum meruit for a portion of the work she did, although after the breach she offered to remove the remainder of the furniture. Tinley v. Van Wert, 119 App. Div. 738, 104 N. Y. Supp. 3; 15 Am. & Eng. Ency. Law (2d Ed.) 1087–1089.

It is urged, however, by the plaintiff, that notwithstanding the defendant's action in hiring another concern to complete the moving, it allowed the plaintiff's subcontractors, B. Keenan & Son, on the afternoon of the 16th of April, to move the two remaining safes. The testimony of the witness Bernard A. Keenan is relied upon to support this claim; but I do not so construe it. It appears therefrom that the witness Keenan, a member of said firm of B. Keenan & Son, subcontractors of the plaintiff, went with one O'Keefe, the representative of Morgan & Bro., the new contractor engaged to move the remaining two safes, and saw Vielhaber, the agent of the defendant. The following meager evidence of the witness Keenan is all that is shown as to what took place at this interview between the three:

"O'Keefe says, 'Well, what are we going to do?' He [Vielhaber] says, 'The safes have got to be moved.' So we [meaning the witness' firm] moved them."

I think the fair inference to be drawn from this testimony is that Vielhaber assumed, and had a right to assume, from the fact that Keenan came with the representative of the new contractor, that his employment by the plaintiff had ceased, and that he was thereafter in the employment of the new contractor, and that the work he did in the afternoon was done under the new contract, and not under the original one; in other words, that he was acting, not for the plaintiff, but for Morgan & Bro., the new contractors.

Upon a new trial the doubt on this point can be cleared up, and if it

in fact is shown that Vielhaber permitted the Keenan people to do the work, knowing that they were still in the employment of the plaintiff, then the plaintiff should be allowed to recover.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.